## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

JASON JONES                                                                PLAINTIFF

V.                                              CAUSE NO. 4:11-CV-00026-CWR-LRA

MUSCLE RESEARCH, LLC                                                      DEFENDANT

### ORDER DENYING AMENDED MOTION TO DISMISS

When a plaintiff fails to serve process in a timely manner, a court excuses the failure only upon a showing of good cause. In this case, the plaintiff perfected service outside the time limit approved by the Court. But that shortcoming was due, in no small part, to the defendant's failure to maintain an accurate registration with its Secretary of State's office. For that reason and others that follow, the Court excuses the untimely service and denies the motions to dismiss.

### FACTS

**Jones' Attempts to Perfect Service of Process.** On February 22, 2011, Jason Jones filed suit against Muscle Research, LLC, an Oklahoma corporation. According to Jones, he bought and ingested a dietary supplement called "Xtreme Stack," which caused injuries to his liver.[1] Thus began an arduous effort to serve Muscle Research, which manufactured the supplement.

The summons was issued on March 9, 2011 and Jones first attempted to serve process on Muscle Research on April 6, at the place registered with the Oklahoma Secretary of State as

---

[1] Complaint [Docket No. 1] at 2. Nowhere in the Complaint does Jones allege when he purchased the product. He merely states that "[i]n October, 2009, after several weeks of taking Xtreme Stack," he began to suffer adverse affects. Complaint at 2.

1

Muscle Research's principal address.[2] But the process server found that building "vacant" with "no furniture inside."[3] Two weeks later, Jones' process server tried to locate Muscle Research at its shipping address, but he discovered the location to be merely a "private UPS mailbox/shipping facility."[4]

After Jones' 120-day service period[5] expired, he moved in July 2011 for an extension of time to serve process. The magistrate judge agreed and entered a text order to allow Jones to continue his efforts through November 28, 2011. Summons was reissued on August 4 for the defendant at the new address counsel discovered.

Soon after the Court granted Jones' motion for an extension, he met with what appeared to be success when he served process on Lee Parmenter in Broken Arrows, Oklahoma. At the time, Jones believed Lee Parmenter to be Muscle Research's "owner and/or principal," and his process server delivered a copy of the complaint and summons to Lee Parmenter on August 23, 2011.[6]

But that belief was short-lived. Muscle Research soon moved to dismiss and submitted an

---

[2] Exhibit A to Plaintiff's Response to Defendant's Amended Motion to Dismiss [Docket No. 27-1] (hereinafter "First Affidavit of Non-Service"). Muscle Research does not disagree with Jones' representation that the address listed in this Affidavit was the address on file with the Oklahoma Secretary of State.

[3] First Affidavit of Non-Service.

[4] Exhibit B to Plaintiff's Response to Defendant's Amended Motion to Dismiss [Docket No. 27-2].

[5] Fed. R. Civ. P. 4(m).

[6] Summons Returned Executed [Docket No. 6]. Lee Parmenter contends that he was served on August 24. *See infra* at n.7. Ultimately, the dispute is irrelevant to the motion's resolution.

affidavit in which Lee Parmenter averred that he was merely an independent contractor for Muscle Research rather than an employee, owner, principal, officer, or agent.[7] Alongside a brief in support of that motion filed on October 25, Muscle Research submitted an affidavit from Jed Parmenter, who attested to be "the Member/Manager of Muscle Research, LLC, an Oklahoma limited liability company, the Defendant herein[.]"[8]

Three days after Jed Parmenter's introduction to the case, Jones procured a new summons, this time addressed to Jed Parmenter.[9] And finally, on December 4, 2011, Jones' process server delivered the summons and complaint to Jed Parmenter in Broken Arrow, Oklahoma.[10] However, by this time, the extension approved by the magistrate judge had lapsed six days earlier.

**Withdrawal of Jones' Original Counsel.** Quite separate from Jones' adventures in service of process, one of his lawyers left the case. On December 5, 2011, the day after service was perfected, attorney Kevin Hamilton of Meridian moved for leave to withdraw from his representation of Jones.[11] No other party, including Jones' remaining attorneys with the Gibson Law Firm in Texas, opposed Hamilton's request.[12]

---

[7] Exhibit A to Motion to Dismiss [Docket No. 7-1].

[8] Verification [Docket No. 12].

[9] Summons [Docket No. 13].

[10] Exhibit C to Plaintiff's Response to Defendant's Amended Motion to Dismiss [Docket No. 28-3] at 3.

[11] Motion to Withdraw as Counsel of Record [Docket No. 14].

[12] *See* Exhibit A to Memorandum in Support of Unopposed Motion to Withdraw as Counsel of Record [Docket No. 17-1].

Therefore, on December 21, 2011, the magistrate judge entered an order granting the request, but only with two certain conditions.[13] First, the magistrate judge ordered Hamilton to deliver copies of her order to the Gibson Law Firm and to file a certificate of service memorializing the delivery. Hamilton was given seven days to accomplish this.[14] Second, the magistrate judge ordered the Gibson Law Firm and Jones to associate local counsel before January 30, 2012.

In a later order,[15] the magistrate judge extended the deadlines: Hamilton was ordered to file his certificate no later than February 22, 2012, and Jones was directed to secure local counsel no later than March 7, 2012. Hamilton filed his Certificate of Compliance[16] the day before it was due. And on the day by which Jones was to secure new counsel, Richard J. Plezia of Houston, Texas, noticed his appearance on Jones' behalf.[17]

## ANALYSIS

Muscle Research originally moved to dismiss on September 14, 2011,[18] and it renewed its request on February 2, 2012.[19] Specifically, between the two motions, Muscle Research raises

---

[13] Order Granting Motion to Withdraw [Docket No. 18].

[14] Order Granting Motion to Withdraw.

[15] Corrected Order [Docket No. 21] at 2.

[16] Certificate of Compliance [*sic*] [Docket No. 23] (hereinafter "Certificate of Compliance").

[17] Notice of Appearance by Richard J. Plezia as Additional Counsel for Plaintiff [Docket No. 24]. Although he practices in Texas, Plezia is admitted to practice in the Southern District of Mississippi.

[18] Motion to Dismiss [Docket No. 7].

[19] Amended Motion to Dismiss [Docket No. 19].

three arguments. First, Muscle Research argues that Jones' complaint should be dismissed because he failed to perfect service in a timely manner. Second, Muscle Research contends that Jones should suffer dismissal because he and his former attorney failed to comply with the terms of the magistrate judge's order granting leave for Hamilton to withdraw. Third, Muscle Research claims that it has no connection to Mississippi and, therefore, that this Court does not enjoy personal jurisdiction.

**Muscle Research's First Argument: Failure to Perfect Process in a Timely Manner.**

It is undisputed that Jed Parmenter, the "member/manager" of Muscle Research, was served with process.[20] But it also is undisputed that Jed Parmenter only received service after the expiration of the extension of time granted by the magistrate judge.[21] Therefore, the question at hand is whether Jones' untimely service of process should be excused. The Court concludes that it should.

When a plaintiff fails to perfect service of process in a timely manner, "the only exception" to dismissal is good cause.[22] Good cause is an inherently amorphous concept,[23] but "some showing of good faith on the part of the party seeking an enlargement *and* some

---

[20] *See supra* at n.10.

[21] *See supra* at 2. Jones spent precious little effort addressing this issue in his brief; his argument addressing service of process consists only of a three-sentence paragraph. Plaintiff's Response to Defendant's Amended Motion to Dismiss [Docket No. 27] (hereinafter "Jones' Response"). Jones' position is that the motion to dismiss should be denied because he eventually perfected service of process, regardless of the fact that the service was untimely. This argument is no more compelling than it is thorough.

[22] *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985).

[23] *Colasante v. Wells Fargo Corp.*, 81 Fed. Appx. 611, 613 (8th Cir. 2003).

reasonable basis for noncompliance within the time specified is normally required."[24]

Decisions regarding whether good cause excuses an untimely service of process are left to a district court's "broad discretion."[25] Courts have identified a number of factors to be evaluated when reaching these decisions. Undertaking the fact-sensitive inquiry,[26] courts have considered the following questions, among others:

- "[W]hether the party exhibited reasonable diligence or made a reasonable effort to effect service[;]"[27]

- Whether the party to be served received actual notice of the litigation;[28]

- "[W]hether the defendant is prejudiced by the absence of timely service;"[29]

- Whether "the plaintiff would be severely prejudiced if his complaint were dismissed[;]"[30] and

---

[24] *Winters*, 776 F.2d at 1306 (quotations omitted) (emphasis in original).

[25] *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634 (5th Cir. 1994).

[26] *See Lee v. Henderson*, 75 F. Supp. 2d 591, 595 (E.D. Tex. 1999) ("What amount to 'good cause' under any particular set of circumstances is necessarily fact-sensitive.").

[27] *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276 (S.D.N.Y. 2003). *See Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1022 (5th Cir. 1995) ("In short, one is required to be diligent in serving process, as well as pure of heart, before good cause will be found."); *Stepney v. City of Columbia*, No. 2:07-cv-250-KS-MTP, 2008 WL 4000402, *2 (S.D. Miss. Aug. 8, 2008) (extension warranted due to good faith efforts made by plaintiff's counsel to properly effect service) (Starrett, J.). On the flip side, the Court reviews whether there is a clear record of delay or contumacious conduct by the plaintiff. *Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772, 777 (S.D. Miss. 2011) (Bramlette, J.).

[28] *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1014 (5th Cir. 1990).

[29] *Chestang,* 820 F.Supp.2d at 778*; Farrace v. U.S. Dep't of Justice*, 220 F.R.D. 419, 420 (D. Del. 2004).

[30] *Boultes v. Entex*, 158 F.R.D. 110, 112 (S.D. Tex. 1994).

- "[W]hether plaintiff moved for an enlargement of time."[31]

Of these five factors, three weigh in favor of Jones.

First, Jones exercised reasonable diligence to perfect service on Muscle Research. Jones began by attempting to serve process on Muscle Research at the address it maintained with the Oklahoma Secretary of State.[32] Jones then tried to locate Muscle Research at its shipping address. Jones later served process on Lee Parmenter, and although Parmenter was not empowered to accept service on Muscle Research's behalf, even Muscle Research concedes that Lee Parmenter had a connection to the company. And finally, albeit out of time, Jones perfected service by serving process on Jed Parmenter less than a week after the expiration of the magistrate judge's deadline.[33] These facts demonstrate that Jones was reasonably diligent in his efforts to serve Muscle Research.

Second, Muscle Research received actual notice of the litigation. On September 14, 2011, more than two months prior to the magistrate judge's deadline, Muscle Research moved to dismiss after Jones served process on Lee Parmenter.[34] The motion was submitted under Muscle Research's name, and it was signed by the same attorney who later submitted Muscle Research's amended motion to dismiss. It is well established that actual notice of litigation, without more, is

---

[31] *Cunningham v. New Jersey*, 230 F.R.D. 391, 393 (D.N.J. 2005).

[32] If the Court were to grant Muscle Research's motion to dismiss, then Muscle Research would be rewarded for failing to keep its registration current with the Oklahoma Secretary of State.

[33] *Cf. Chestang*, 820 F. Supp. 2d at 778 (court found delay minimal where defendant was served on the 139th day after the filing of Complaint – "a mere 19 days late").

[34] *See* Motion to Dismiss [Docket No. 7].

insufficient to satisfy the service requirements memorialized by Rule 4 of the Federal Rules of Civil Procedure.[35] However, it is an issue that is relevant to the question of good cause, and in this case, it weighs in Jones' favor.

Third, Muscle Research has not demonstrated that it would suffer prejudice by a finding of good cause. For example, there is no indication that necessary witnesses or critical evidence are any less available to Muscle Research's defense than they would have been if Jones had perfected service six days earlier than he did.

But the factors do not point unfailingly in Jones' direction. The fourth factor is whether Jones would suffer prejudice to his ability to pursue his claims. The answer to that question appears to be that he would not. A review of Jones' Complaint[36] strongly suggests that his claims accrued, at the latest, in October 2009. Without citation to any Mississippi authority, Muscle Research argues "[t]here is a two year statute of limitations on product liability claims,"[37] which would preclude Jones from bringing the claim after October 2011. It further claims that "[i]t is prejudicial to Muscle Research to defend against a claim it first learned about after the statute of limitations has *possibly* expired[.]"[38] However, under Mississippi law, the limitations period for

---

[35] *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988).

[36] Complaint at 2.

[37] Defendant's Reply to Plaintiff's Response to Motion to Dismiss [Docket No. 11] (hereinafter "Defendant's First Reply") at 6. *See also* Defendant's Reply to Plaintiff's Response to Defendant's Amended Motion to Dismiss [Docket No. 29] (hereinafter "Defendant's Second Reply") at 4.

[38] Defendant's First Reply at 6 (emphasis added).

products liability claims involving latent injuries is three years, not two.[39] Likewise, Jones'

claims for negligence[40] and misrepresentation[41] are subject to three-year limitations periods, and

the claim for breach of implied warranty is subject to a six-year statute of limitations.[42]

Therefore, if the Court granted Muscle Research's motion to dismiss, Jones would not be

precluded from refiling his claims quickly. The Court weighs this factor in Muscle Research's

favor.

        The fifth factor, which is the question of whether the plaintiff requested an extension, also

favors Muscle Research. The record clearly demonstrates that the magistrate judge set a deadline

of November 28, 2011, for Jones to perfect service of process on Muscle Research, and he did

not. Jones would have been well within his rights to request a second extension, and he does not

explain his failure to do so. Therefore, the Court finds that this factor weighs in Muscle

Research's favor.

        However, with three factors favoring Jones and two factors favoring Muscle Research,

the balance tips in Jones' favor. Therefore, the Court finds that good cause excuses Jones' failure

---

[39] *Lincoln Elec. Co. v. McLemore*, 54 So. 3d 833, 835-36 (Miss. 2010).

[40] *Smith v. DiMa Homes, Inc.*, 74 So. 3d 377, 378 (Miss. Ct. App. 2011).

[41] *Gray v. Upchurch*, No. 5:05-cv-210-KS-JMR, 2006 WL 3694604, *5 (S.D. Miss. 2006) (Starrett, J.) (addressing statute of limitations for intentional misrepresentation) (citing *Sanderson Farms, Inc. v. Ballard*, 917 So. 2d 783, 789 (Miss. 2005)); *Bank of Commerce v. SouthGroup Ins. & Fin. Servs., LLC*, 73 So. 3d 1106, 1109 (Miss. 2011) (addressing statute of limitations for negligent misrepresentation).

[42] Miss. Code Ann. § 75-2-725(1) ("An action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued.").

to serve Muscle Research prior to November 28, 2011.[43]

**Muscle Research's Second Argument: Failure to Comply with the Terms of the Magistrate Judge's Order.** When Judge Anderson agreed to permit Kevin Hamilton to withdraw from his representation of Jones, she did so through a written order that contained two requirements.[44] First, Judge Anderson ordered Hamilton to serve copies of her order on Gibson's out-of-state counsel at the Gibson Law Firm and on Jones himself, and then to file a certificate of service signifying his compliance. Second, Judge Anderson granted the Gibson Law Firm and Jones a limited period of time in which to associate an attorney who was admitted to practice law before this Court.

Judge Anderson originally required Hamilton to file his certificate of service on or before December 28, 2011, but that deadline later was extended[45] to February 22, 2012. As for the Gibson Law firm and Jones, Judge Anderson ordered that they associate new counsel on or before January 30, 2012. But likewise, that deadline eventually was extended to March 7, 2012.

In its second motion to dismiss, Muscle Research argues that Jones and his attorneys failed to comply with those requirements and, therefore, that Jones' claims should be dismissed involuntarily for failure to prosecute.[46] The Court disagrees.

---

[43] Even if good cause is lacking, as noted by Judge Starrett, "a court-ordered extension of the period for effecting service would remain the optimal course of action" because, among other reasons, that outcome is "consistent with the preferred practice of the other courts in this circuit." *Stepney*, 2008 WL 4000402, at *3.

[44] Order Granting Motion to Withdraw, *supra* at n.13.

[45] Corrected Order, *supra* at n.15.

[46] Fed. R. Civ. P. 41(b).

10

At the time Muscle Research filed its second motion on February 2, 2012, its observations were correct. However, as Judge Anderson noted in the order extending her deadlines, Hamilton was terminated from the case's docket prior to the entry of her order permitting Hamilton to withdraw, which means that he did not receive notice of the order.[47] Therefore, Judge Anderson granted additional time for Hamilton, Jones, and the Gibson Law Firm to meet the obligations set out in her original order.

The record now reveals that all concerned parties have complied with Judge Anderson's terms. Hamilton filed a Certificate of Compliance[48] on February 21, 2012, and on March 7, 2012, attorney Richard J. Plezia noticed his appearance on Jones' behalf.[49]

Notably, Muscle Research does not address this issue in its reply brief, which it filed on July 6, 2012.[50] Presumably, Muscle Research recognizes that Jones and his attorneys have since come into compliance with Judge Anderson's order.

In any event, that compliance renders this issue an invalid reason for dismissal.

**Muscle Research's Third Argument: Lack of Personal Jurisdiction.** Muscle Research's final argument is that it does not have sufficient contacts with the State of Mississippi to justify the exercise of personal jurisdiction by a Mississippi-based court. Because of the doctrine of specific jurisdiction, the Court disagrees.

---

[47] Corrected Order at 1.

[48] Certificate of Compliance, *supra* at n.16.

[49] Notice of Appearance by Richard J. Plezia as Additional Counsel for Plaintiff, *supra* at n.17.

[50] Defendant's Second Reply, *supra* at n.37.

11

According to one of Muscle Research's briefs, which was verified under oath by Jed Parmenter,[51] Muscle Research does not own any property in Mississippi.[52] Jones claims in his Complaint that he purchased Muscle Research's product from Payne Family Fitness Center and James Payne, Jr.,[53] but Muscle Research counters that it "sold only one bottle of the product at issue to James Payne, Jr., an individual," and that the product was not intended for resale.[54] Moreover, Muscle Research argues that Jones has not offered evidence that James Payne, Jr., is a resident of Mississippi.[55] In any event, Jones does not contend that Muscle Research's contacts with Mississippi extend beyond its sale of the product at issue.

Challenges against personal jurisdiction implicate the Fourteenth Amendment's Due Process Clause, which protects individuals or corporations from being forced to litigate in a state in which the defendant "has no contacts, ties or relations."[56] "A court may exercise personal jurisdiction if a non-resident defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[57]

Courts recognize two types of minimum contacts that can give rise to an exercise of

---

[51] Verification [Docket No. 8-1].

[52] Brief in Support of Defendant's Motion to Dismiss [Docket No. 8] at 1.

[53] Complaint at 2.

[54] Brief in Support of Defendant's Motion to Dismiss at 3.

[55] Brief in Support of Defendant's Motion to Dismiss at 3.

[56] *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 319 (1945).

[57] *Tichenor v. Roman Catholic Church of Archdiocese of New Orleans*, 32 F.3d 953, 958 (5th Cir. 1994) (quoting *Int'l Shoe*, 326 U.S. at 316).

12

personal jurisdiction: those that create general jurisdiction and those that create specific jurisdiction.[58] Jones does not explain which theory he rests on, but clearly, general jurisdiction is not available to him. "Where a defendant has 'contiguous and systematic general business contacts' with the forum state, the court may exercise 'general jurisdiction' over any action brought against the defendant."[59] Muscle Research has no such contacts with Mississippi: it is an Oklahoma corporation, and the record indicates that it availed itself of this forum state only once.

That leaves only the possibility that Muscle Research is subject to specific jurisdiction, which may exist "in a suit arising out of or related to the defendant's contacts with the forum."[60] Specific jurisdiction exists when "the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."[61] In other words, "specific jurisdiction requires a nexus between the defendant's contacts with the forum state and the subject matter of the [plaintiff]'s claims."[62] An exercise of specific jurisdiction also must be "fair and reasonable."[63]

---

[58] *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

[59] *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

[60] *Helicopteros Nacionales*, 466 U.S. at 414 n.8. *See also Brown v. Slenker*, 220 F.3d 411, 417 (5th Cir. 2000) (plaintiff need only make *prima facie* demonstration of personal jurisdiction to defeat a motion to dismiss; preponderance of the evidence is not necessary).

[61] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations and quotations omitted).

[62] *Zumbro, Inc. v. Cal. Natural Prods.*, 861 F. Supp. 773, 779 (D. Minn. 1994) (quoted favorably by *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 n.5 (5th Cir. 2006)).

[63] *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

In this case, each of these questions points toward the proper exercise of specific jurisdiction. Muscle Research's verified brief[64] attests that Muscle Research "sold only one bottle of the product at issue to James Payne, Jr., an individual."[65] Jones offers a copy of the Mississippi Secretary of State's registration for Payne Family Fitness Center LLC, which lists James Larry Payne, Jr., of Union, Mississippi, as LLC's registered agent.[66] Therefore, the record supports the conclusion that Muscle Research purposefully directed its activities toward Mississippi – specifically, when it sold a bottle of Xtreme Stack to James Payne, Jr. in Union, Mississippi.

Additionally, Jones' alleged injuries arose out Muscle Research's venture into Mississippi. Muscle Research makes much of the fact that it did not intend for Jones to come into possession of its product,[67] but that is not the question at hand. The question is whether Muscle Research intentionally directed its activities toward Mississippi and whether those activities resulted in Jones' claims. That question must be answered in the affirmative. Muscle Research sent a product to Mississippi, and ultimately, that product is alleged to have caused Jones' injuries. The nexus between Muscle Research's actions and the claims in this case is direct.

The final question, then, is whether the exercise of specific jurisdiction would violate traditional notions of fair play and substantial justice.[68] The defendant bears the burden of proof

---

[64] *Supra* at n.8.

[65] Brief in Support of Defendant's Motion to Dismiss at 3.

[66] Exhibit C to Plaintiff's Response to Defendant's Motion to Dismiss [Docket No. 9-3].

[67] *See* Defendant's Reply to Plaintiff's Response to Defendant's Amended Motion to Dismiss at 6.

[68] *Int'l Shoe*, 326 U.S. at 316.

regarding that question,[69] and Muscle Research has offered no argument on that point. And aside from the obvious point that Muscle Research is located in Oklahoma, no evidence springs from the record to suggest that requiring Muscle Research to defend itself in Mississippi would be unfair. To the contrary, the record demonstrates that Muscle Research has retained counsel in this district and has litigated this matter ably.

In sum, although Muscle Research has not so thoroughly availed itself of Mississippi's laws as to give rise to general jurisdiction, it purposefully directed its activities toward Mississippi, and that activity ultimately resulted in Jones' alleged injuries. And without any suggestion that doing so would conflict with traditional notions of fair play and substantial justice, the Court concludes that it enjoys specific jurisdiction over this matter.

## CONCLUSION

Each of Muscle Research's three arguments fails. First, Jones' failure to serve process on Muscle Research in a timely manner is excused by good cause. Second, Jones and his attorneys did not fail to comply with the terms of the magistrate judge's order. Third, the exercise of specific jurisdiction permits Jones to proceed with his suit in Mississippi. Therefore, Muscle Research's motion to dismiss and amended motion to dismiss both are denied.

SO ORDERED this Thirty-First day of July 2012.


/s/ *Carlton W. Reeves*

Hon. Carlton W. Reeves
United States District Court Judge

---

[69] *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).